IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and JAMES S. JORGENSEN, not individually, but as Administrator of the Funds,<br><br>Plaintiffs,<br><br>v.<br><br>J.M. WILLIAMS CONSTRUCTION CO., an involuntarily dissolved Illinois corporation, and JENNIFER Y. WILLIAMS, individually,<br><br>Defendants. | Case No.: 15-9010 |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and James S. Jorgensen, not individually, but as Administrator of the Funds (hereinafter collectively the "Funds"), by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Amy Carollo, John Hamada, Katherine C. Vanek, and Kelly Carson, for their Complaint against Defendant J.M. Williams Construction Co., Inc., an involuntarily dissolved Illinois corporation, and Jennifer Y. Williams, individually, state:

## COUNT I

### (Failure to Submit Reports and Pay Employee Benefit Contributions)

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331; federal common law; 28 U.S.C. §1367; and 805 ILCS 5/1 et seq.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff James S. Jorgensen is the Administrator of the Funds and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

2

5. Defendant J.M. Williams Construction Co., (hereinafter the "Company"), is an involuntarily dissolved Illinois corporation effective May 9, 2008. At all times relevant herein, the Company did business within this District and was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. Defendant Jennifer Y. Williams, (hereinafter "Williams") is the owner and president of the Company and was the owner and president of the Company at the time of involuntary dissolution and prior to the involuntary dissolution, and is joint and severally liable for all debts and liabilities of the Company to the Funds incurred in carrying on the Company's business after the date of involuntary dissolution. 805 ILCS 5/1 et seq.

7. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to a collective bargaining agreement, the most recent of which became effective June 1, 2013 ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in paragraph 8 below, is attached hereto as Exhibit A.)

8. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety

3

Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

9. The Agreement, the Funds' respective Agreements and Declarations of Trust, the Retiree Welfare Fund's Agreement and Declaration of Trust, and the Training Fund Agreement and Declaration of Trust, obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits, and for the Training Fund, and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Retiree Welfare Fund Agreement and Declaration of Trust, and the Training Fund Agreement and Declaration of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11. The Agreement obligates the Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

12. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a) failed to submit reports and/or pay all contributions to Plaintiff Laborers' Pension Fund for the period of June 2015 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and/or pay all contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of June 2015 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to submit reports and/or pay all contributions to Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of June 2015 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to submit reports and/or pay all contributions to Laborers' Training Fund for the period of June 2015 forward, thereby depriving the Laborers' Training Fund of

contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e) failed to submit reports and/or pay all contributions owed to one or more of the other affiliated funds identified in paragraph 8 above for the period of June 2015 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

(f) failed to obtain and maintain a surety bond as required by the collective bargaining agreement.

13. The Funds have demanded an audit and the Company has failed to submit to an audit for the time period of April 1, 2007 through June 15, 2015, thereby depriving the Funds of information needed to administer the Funds and jeopardizing the benefits of the participants and beneficiaries.

14. Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company is liable for the costs of any audit which reveals unpaid contributions.

15. The Company's actions in failing to submit timely reports and contributions and failing to submit to an audit to determine benefit contribution compliance violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

16. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, 805 ILCS 5/1 et seq., and the terms of the Agreement and the Funds' respective Trust Agreements, the Company and Williams are liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid

contributions, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant J.M. Williams Construction Co., and Jennifer Y. Williams, jointly and severally, as follows:

a. ordering the Company to submit benefit reports and pay all contributions for the time period of June 2015 forward;

b. ordering the Company to submit its books and records to an audit for the time period of April 1, 2007 through June 15, 2015 to determine benefit contribution compliance;

c. entering judgment in sum certain against the Company on the amounts due and owing pursuant to the June 2015 forward benefits reports, and on the amounts found due and owing pursuant to the audit, if any, including contributions, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs;

d. ordering the Company to obtain and maintain a surety bond; and

e. awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT II

### (Failure to Submit Reports and Pay Union Dues)

17. Plaintiffs reallege paragraphs 1 through 16 as though fully set forth herein.

18. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers Union dues which should have been or have been deducted from the wages of covered

employees. Union dues which are not submitted in a timely fashion are assessed 10 percent liquidated damages.

19. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust the Company has:

(a) failed to submit Union dues reports and dues that were or should have been withheld from the wages of its employees performing covered work for the period of June 2015 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance; and

(b) failed to submit its books and records to a requested audit to determine dues contributions compliance for the period of April 1, 2007 through June 15, 2015, thereby depriving the Union of information.

20. The Company also failed to timely submit Union dues reports and dues that were withheld from the wages of its employees for the month of May 2015. Pursuant to the terms of the Agreement, the Company owes $14.45 in accumulated liquidated damages on the late-paid May 2015 dues report.

21. Pursuant to the Agreement and Federal Common Law, the Company is liable to the Funds for the unpaid Union dues, as well as liquidated damages, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants J.M. Williams Construction Co., and Jennifer Y. Williams, jointly and severally, as follows:

8

      a.      ordering the Company to submit dues reports and pay all dues for the time period of June 2015 forward;

      b.      ordering the Company to submit its books and records to an audit for the time period of April 1, 2007 through June 15, 2015 to determine dues contributions compliance;

      c.      entering judgment in sum certain against the Company on the amounts due and owing pursuant to the June 2015 forward dues reports, and on any amounts found due and owing pursuant to the audit, including dues, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs; and

      d.      awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

October 12, 2015

                                                        Laborers' Pension Fund, et al.

                                                        By: /s/ Kelly Carson
                                                             Kelly Carson

Patrick T. Wallace
Jerrod Olszewski
Amy N. Carollo
John Hamada
Katherine C. Vanek
Kelly Carson
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



**HEADQUARTERS OF**
# Construction & General Laborers'
## District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O. —
6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • PHONE: 312-237-7507 • FAX: 312-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

Joseph A. Lombardo, Jr.
Secretary-Treasurer

Bruno Caruso
President
Business Manager

## MEMORANDUM OF JOINT WORKING AGREEMENT

It is hereby stipulated and agreed by and between **J. M. Williams Const.**, herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, and encompassing the geographical areas of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other Locals which may come within its jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncoerced majority of each Employer's laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, G.D.C.N.I.C.A.W.C.C., Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendments thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local Union is herein specifically incorporated in this agreement and shall supersede the standard District Council agreement in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS PENSION FUND, and to the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND and to become bound by and be considered a party to the Agreements and the Declaration of Trusts creating said Trust Funds as if (he) (it) had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions, the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreements and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the intent for to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change is shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows:

| | |
|---|---|
| June 1, 1996 to May 31, 1996 | $20.85 Per Hour Wages<br>$3.12 Per Hour Health and Welfare Fund<br>$1.45 Per Hour Pension Fund<br>$.10 Per Hour Training Fund<br>$.02 Per Hour MCIAF (or such amount as provided in local agreement)<br>$.01 Per Hour Chicagoland Safety Council (if applicable in local agreement).<br>Dues Deductions are $.25 Per Hour for each hour worked unless notified of an increase. |
| June 1, 1996 to May 31, 1997 | $1.00 Per hour increase for the year June 1, 1996 through May 31, 1997 to be allocated between wages and fringe benefits by the Union in its sole discretion.<br>Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated<br>MCIAF and Chicagoland Safety Council remain as above for the life of the contract.<br>Dues Deductions are $.25 Per Hour unless notified of an increase. |
| June 1, 1997 to May 31, 1998 | $1.00 Per hour increase for the year June 1, 1997 through May 31, 1998, to be allocated, between wages and fringe benefits by the Union in its sole discretion.<br>Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated.<br>MCIAF and Chicagoland Safety Council remain as above for the life of the contract.<br>Dues Deductions are $.25 Per hour unless notified of an increase. |

All additional wage rate dues checkoff, or fringe benefit increases as negotiable after May 31, 1998, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1996, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty Five Cents ($.25) for each straight time hour worked and Twenty-Five Cents ($.25) for each overtime hour worked, and shall remit monthly to the UNION office designated by the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions to be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through May 31, 1998 and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto received not less than 60 days nor more than 90 days prior to the expiration date, of the desire to modify and amend this Agreement through negotiation. What absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at **Owen 50** this **21st** day of **Dec** 19 **97**.

ACCEPTED:

Laborers' Local Union No. **5**

By **Frank Zuberri**

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By **Bruno Caruso**
Bruno Caruso, President/Business Manager

By **Joseph A. Lombardo, Jr.**
Joseph A. Lombardo, Jr., Secretary-Treasurer

**J.M. Williams Const.**
(Employer)

By **Jason M. Williams Sec. Treas.**
(Name & Title)

**P.O. Box 158**
(Address)

**Crete    IL 60417**
(City)    (State)    (Zip)

**708   672 - 06__**
(Telephone)

TRUST FUND

**EXHIBIT A**